Northwest Racing Association, Plaintiff-Appellant, v. William Hunt and Virginia Daley, Executors of the Last Will and Testament of George E. Hunt, Deceased, William Hunt, et al., Defendants-Appellees.

Gen. No. 11,223.

Second District, First Division.

February 17, 1959.

Released for publication March 6, 1959.

Harold R. Nettles, of Freeport, for appellant.

Bert P. Snow, of Freeport, for appellees.

PRESIDING JUSTICE SPIVEY delivered the opinion of the court.

Northwest Racing Association, a Corporation, hereafter called plaintiff, brought suit in the Circuit Court of Stephenson County for the construction of a lease with an option agreement therein. The defendants were the co-executors and sole heirs of George E. Hunt, deceased, and Miles H. Daley. Miles H. Daley was the spouse of the co-executor, Virginia Daley. Daley entered into a contract with the executors and sole heirs of George E. Hunt, deceased, for the purchase of certain real property leased by the plaintiff. The lease

394

was in effect at the time of the suit herein and contained the following provision which will hereafter be referred to as the "first option."

"It is further agreed by and between the parties hereto as a part of the consideration hereof that *upon request made by lessee at any time before the legal termination of this lease,* lessor will sell and convey the leased premises as hereinabove described by good and sufficient warranty deed free and clear of any and all encumbrances excepting taxes for the then current year to lessee upon receipt from lessee as consideration for such conveyance the sum of Twenty Thousand Dollars ($20,000) in cash, less any sums that lessee may have paid lessor as rent for said premises during term of this lease and prior to the date such request, or option, may be exercised; provided that in addition thereto lessee pay lessor a sum equal to the amount of the general taxes paid by lessor subsequent to the year 1954 on said property." (Emphasis supplied.)

In addition the lease also contained language which we shall hereafter refer to as the "second option." This language was as follows:

"It is further agreed between the parties hereto that in the event of a contemplated sale of said premises by *lessor* during the term of this lease to a third party, lessor agrees to give lessee written notice of said contemplated sale at least thirty (30) days prior to the date warranty deed is to be delivered to such third party; such notice shall include the terms and conditions on which it is proposed to make such sale and such notice shall be sent to lessee by registered mail at the address of its registered agent; and thereupon within thirty (30) days from the date of mailing said notice lessee shall have the right to purchase said premises upon the *terms and conditions proposed,* and on the failure of lessee to exercise *such option*

*within the time aforesaid,* the option hereby granted to lessee in this and the foregoing paragraphs shall be and stand cancelled and revoked. This option shall be valid whether the demised premises be sold in a single transaction or together with other real estate whether adjoining or not." (Emphasis supplied.)

The heirs and executors entered into an agreement with Daley, whereby Daley would purchase the leased premises. Attempting to conform to the provisions of the second option in the lease, the heirs and executors served notice upon the plaintiffs that Daley had entered into a contract for the purchase of the subject premises. All terms of the contract between the heirs and executors on the one side and Daley, on the other, were made known in the notice served upon the plaintiff. Daley offered to pay a substantially larger amount than was provided for in the first option.

Thereafter, the plaintiff offered to perform according to the first option. That is, it contended that it had the right under the first option, to purchase at the price fixed by the first option without regard to the terms and conditions of any attempted sale under the second option and offered accordingly.

The defendants refused to sell to the plaintiff for the price fixed in the first option and plaintiff brought its action for a construction of the lease, and for an injunction to restrain the defendants from proceeding with the contemplated sale to Daley. In the complaint, the plaintiff alleged that the sale to Daley was an attempt to deprive the plaintiff of its option to purchase the property and was not in fact a bona fide sale. The trial court found that plaintiff had lost any right it had to purchase the premises by its failure to purchase the premises upon the terms and conditions of the sale to Daley under the second option. Further, the court ordered that the defendants were free to proceed with the performance of the contract of sale of the premises to Daley.

396

Plaintiff relies on two points on this appeal. It contends that it had the right to purchase at the price fixed in the first option and also contends that the sale to Daley was voidable because Daley was the spouse of one of the co-executors.

Neither position is tenable.

Plaintiff in its brief and argument contends on the one hand that a purchase option placed in a lease for the benefit of the lessee is to be construed with that in mind. It also argues that every effort should be made to give some effect to every part of the contract. It is contended that the second option is in conflict with the first option and the first option is controlling. If the options are in conflict or are repugnant, one to the other, then the second option should be rejected.

In Thomas Hoist Co. v. Newman Co., 365 Ill. 160, 6 N.E.2d 171, the court said, "It is the duty of a court, when construing written contracts, to determine and give effect to the intention of the contracting parties. In arriving at this intention effect must be given to each clause and word used, without rejecting any words as meaningless or as surplusage. Mittel v. Karl, 133 Ill. 65; Lehndorf v. Cope, 122 Ill. 317, 6 R. C. L. (p. 837) but where there are two clauses in a contract which are so entirely repugnant to each other that they cannot stand together, the first shall be received and the latter rejected. Benjamin v. McConnel, 4 Gilm. 536; 6 R. C. L., p. 847."

Only in the event that the options are entirely repugnant would we be justified in rejecting the second option. Analyzing the contract, we believe that the first option was to be exercised at the instance of the plaintiff and plaintiff was given the right to purchase the premises at a stipulated price. The second option was to be exercised at the instance of the lessor and gave the lessor the option to sell the premises to a third person subject to the right of the plaintiff to purchase after receiving the requisite notice of the

397

contemplated sale "upon the terms and conditions proposed." In the event the plaintiff failed to purchase upon the terms and conditions proposed, then both options granted the plaintiff were revoked.

██ Giving the language used its plain and natural meaning we conclude that there is no conflict or repugnancy. In our judgment there are two options, each susceptible of interpretation and each harmonious and consistent with the other. There being no repugnancy, no part of the contract may be disregarded. "In considering the contract, we must interpret it in its entirety, and we cannot alter a contract or make a new one for the parties to sustain the claim of one of them." Capitol Paper Box, Inc. v. Belding Hosiery Mills, 350 Ill. App. 68, 111 N.E.2d 858.

██ Plaintiff's right in the first option was a valid and subsisting right subject to an equally effective right of the lessor to sell to a third party. Obviously only one completed sale was contemplated, and the rights of both parties were fixed when either party elected to act under its option. In this case, the lessors fixed the rights of the parties by selling under the second option. Plaintiff failed to exercise its right under the second option and the trial court did not err in concluding that plaintiff had lost its right to purchase under either option in the lease by reason of its failure to meet the offer of Daley.

Our attention has not been called to any Illinois cases squarely in point. The plaintiff, however, relies on Butler v. Richardson, 74 R. I. 344, 60 A.2d 718, and Sinclair Refining Co. v. Allbritton (Tex. Civ. App.), 218 S.W.2d 185. In these cases where the lease granted the lessee the option to purchase for a specified price at any time during the term of the lease, a subsequent independently stated provision in the lease by which the lessee is given an option or first right to

buy the premises at such price as may be offered by a third person, if lessor wants to sell for the amount of such offer, was not given precedence or even equal dignity with the provision granting the option to purchase at a specified price.

In Shell Oil Co., Inc. v. Blumberg, 154 F.2d 251, a lease with options similar to the options in this case was considered. The court said "We think the lower courts' construction of the contract was entirely correct. The first paragraph thereof, standing alone, confers upon appellant an option to purchase the premises for $10,000, during the term of the lease, but the second paragraph limits or modifies the preceding paragraph. Upon the notice to appellant by the Bishop of a bona fide prospective sale, and upon its being given the opportunity to exercise its option to purchase the property at the same price offered, and the appellant's refusal to purchase, the first paragraph of the option agreement lapsed."

In Thompson, Real Property, Section 1329, page 492, the following language is referred to as the general rule: "When the lessee is given the first privilege of purchasing the premises, he must, after notice from the lessor of the receipt of a bona fide offer, elect to exercise his privilege in accordance with the terms of the lease or the right is lost."

Defendants rely upon the case of Harding v. Gibbs, 125 Ill. 85, 17 N. E. 60. They contend it is determinative of the issues herein. The case is very similar factually to the case herein. However, the only point raised by the appeal was as to the validity of the notice given by the lessor. It was assumed by both parties that the lessee's right could be extinguished by a proper notice. The court in the Harding case, supra, was not called upon to decide the issues raised by the plaintiff in the instant suit and so the Harding case is not conclusive. The result of the case, how-

399

ever, is consistent with the Shell Oil Co. case, supra, and we consider this to be the proper interpretation.

██ ██ The only remaining question is whether or not the sale to Daley is voidable at the option of the plaintiff, because it is in fact a sale to a nominee of one of the co-executors. Both parties agree that a sale by a fiduciary to himself is voidable. The plaintiff reasons that a sale to a nominee of a fiduciary should be voidable also. Plaintiff cites the case of Elting v. First National Bank of Biggsville, 68 Ill. App. 204, as authority. In that case the executor so manipulated the sale of the decedent's property as to acquire title to the property, leaving nothing to pay off creditors' claims. The court said, "The right of a creditor to attack such a sale is on the ground that the executor or administrator, through another, was the purchaser in question. It is insisted that as the heir succeeds to the land and the creditor has no interest other than in the fund arising from a sale of it by the representative, that in a case where the representative has purchased at his own sale he cannot be held to be a trustee of the creditor. While it is true that in all the reported cases from our Supreme Court, where such sales have been held fraudulent and voidable they have been held so at the suit of heirs, we are of the opinion that in a case where the sole heir or devisee is the administrator or executor and the sale is held voidable because of his fraud, a creditor whose rights have been prejudiced, may invoke the aid of a court of equity to the extent of having the sale set aside or the money realized out of a subsequent deal of the land declared to be held in trust for the payment of his claim."

This authority is not persuasive in this case, however, for no creditors' rights are prejudiced. True, the sale to Miles Daley deprives the plaintiff of the right to purchase the property under the terms of the first

option. However, the right of the plaintiff existed to purchase at the same price as offered by Miles Daley. The act of Miles Daley in purchasing the property was actually of benefit to creditors in this case for the sale would result in an additional sum of money being made available for the payment of claims.

No grounds were shown to justify the court in setting aside the sale to Miles Daley.

The decree of the Circuit Court of Stephenson County is affirmed.

Affirmed.

McNEAL and DOVE, JJ., concur.