**R. V. TARRANT, Plaintiff-Appellant,**

v.

**Floyd E. SELF and Ethel J. Self, Defendants-Appellees.**

**No. 1–578A117.**

Court of Appeals of Indiana, First District.

April 17, 1979.

Rehearing Denied May 24, 1979.

James W. Funk, Kimmell, Funk & Cummings, Vincennes, for plaintiff-appellant.

G. Daniel Kelley, Jr., Michael S. Pabian, Indianapolis, for defendants-appellees.

LOWDERMILK, Judge.

## STATEMENT OF THE CASE

Plaintiff-appellant R. V. Tarrant appeals from a judgment in favor of defendants-appellees Floyd E. Self, who is now deceased, and Ethyl J. Self wherein the trial court held that a provision in Tarrant's lease, which gave him the option to purchase the land he was leasing from the Selfs after the first fifteen year leasing period, never became effective because this suit was filed before the first fifteen years of the lease had transpired and because, under a clause of the lease which gave Tarrant the right of first refusal, Tarrant refused to buy the leased premises at a price equal to that offered by a third party.

We affirm.

## FACTS

In 1959 Tarrant, a jobber for Phillips Petroleum Company and the owner of a company called Tarrant Oil Company, negotiated two contracts with the Selfs which concerned the leasing by Phillips and Tarrant respectively, of two adjoining pieces of property which were owned by the Selfs. The Phillips lease was a fifteen year lease which began on August 1, 1959 and expired on July 31, 1974. Under the lease Phillips was required to pay the Selfs $270.00 per month in rent. The lease also included the following provisions:

"12. Lessee shall have an option to purchase the leased premises and property, free and clear of all liens and encumbrances, at the end of the first Fifteen (15) years of the term hereof, for the sum of $25,000.00 and at any time during the next Five (5) years, and during the renewal period(s), for the sum of $25,000.00, provided that Lessee shall notify Lessor in writing of its intention to purchase at least thirty (30) days prior to the expiration of the period during which said option is to be exercised. In the event Lessee exercises this option Lessor shall furnish to Lessee for examination a complete abstract of title, certified to date, or title insurance policy at the option of Lessee, showing merchantable title to said premises in Lessor and a reasonable time shall be allowed for examination of title by Lessee and thereafter within a reasonable time Lessor shall correct the defects, if any, which Lessee found existing in said title. Lessor shall furnish such reasonable evidence of clear title to the leased personal property as Lessee may request. If title shall be approved by Lessee, Lessor shall execute and deliver unto Lessee a proper general warranty deed and bill of sale conveying and warranting to Lessee the premises and property free and clear of all liens, taxes and other encumbrances, upon payment to Lessor of the consideration above stated.

13. Lessee shall have an option to extend this lease for a term of Five (5) years from and after expiration of the primary term, and if such option is exercised, Lessee shall have the option of further extending it for an additional Five (5) years from and after expiration of the extended term, such extension or exten-

sions to be upon the same terms and conditions as herein setforth. To exercise either of these options, the Lessee shall give the Lessor notice in writing at least thirty (30) days before the expiration of the primary term or the extended term, as the case may be. In the event this lease is extended hereunder, the rental shall be $275.00 per month for the first extended term and $275.00 per month for the second extended term, payable as hereinabove provided for the primary term. 'Primary term' and 'extended term' as used in this paragraph include any extension of either or both by virtue of Paragraph 10 above.

14. If the Lessor or the Lessor's successor or assigns at any time during the term of this lease or any renewal or extension thereof receive a bona fide offer to purchase or to lease the demised premises and property for a term to begin subsequent to the present demised term or any extension or renewal thereof, and Lessor desires to sell or lease said premises and property under the terms of said offer. Lessor agrees to give Lessee immediate notice in writing of such bona fide offer setting forth the name and address of the proposed purchaser or Lessee who had made the offer, with a full disclosure of all terms and provisions thereof. Lessee shall have the first option to purchase or lease the demised premises within thirty days after said notice on the same terms of any such proposal. In the event that Lessee does not elect to purchase the demised premises and property within that period, then Lessee shall have, upon the same conditions of notice, the continuing first option to purchase or to lease the said premises upon the terms of any subsequent bona fide offer or offers to purchase or to lease made to Lessor or a subsequent owner. Failure of Lessee to elect to purchase or to lease under this paragraph in any instance shall in no way limit or affect Lessee's rights under Paragraphs 10, 12 or 13 above and any sale or further leasing by Lessor, its successors or assigns to a third person shall in all respects be subject to this lease."

The Tarrant lease was also a fifteen year lease which began on August 1, 1959 and expired on July 31, 1974. Under his lease Tarrant was obligated to pay $75.00 per month in rent. Tarrant's lease also included the following provisions:

"10. Lessee shall have an option to purchase the herein leased premises and property free and clear of all liens and encumbrances, and adjoining property including a service Station located at 13th & Willow Streets and leased by Phillips Petroleum Company, *after the first Fifteen (15) years of the term hereof,* for the sum of $25,000.00, if Phillips Petroleum Company does not exercise its option to purchase said Service Station. In the event Phillips Petroleum does exercise said option, then Lessee shall have the right to purchase the leased property for One Dollar ($1.00). In the event Lessee exercises this option, Lessor shall furnish to Lessee for examination a complete abstract of title, certified to date, or title insurance policy at the option of Lessee, showing merchantable title to said premises in Lessor and a reasonable time shall be allowed for examination of title by Lessee and thereafter within a reasonable time Lessor shall correct the defects, if any, which Lessee found existing in said title. Lessor shall furnish such reasonable evidence of clear title to the leased personal property as Lessee may request. If title shall be approved by Lessee, Lessor shall execute and deliver unto Lessee a proper general warranty deed and bill of sale conveying and warranting to Lessee the premises and property free and clear of all liens, taxes and other encumbrances, upon payment to Lessor of the consideration above stated.

11. Lessee shall have an option to extend this lease for a term of 5 (five) years from and after expiration of the primary term, and if such option is exercised, Lessee shall have the option of further extending it for an additional five (5) years from and after expiration of the extended term, such extension or extensions to

be upon the same terms and conditions as herein set forth. To execute either of these options, the Lessee shall give the Lessor notice in writing at least thirty (30) days before the expiration of the primary term or the extended term, as the case may be. In the event this lease is extended hereunder, the rental shall be $75.00 (Seventy Five Dollars) per month for the first extended term and $75.00 (Seventy Five Dollars) for the second extended term, payable as hereinabove provided for the primary term. 'Primary term' and 'extended term' as used in the paragraph include any extension of either or both by virtue of Paragraph 10 above.

12. If the Lessor or the Lessor's successors or assigns at any time during the term of this lease or any renewal or extension thereof receive a bona fide offer to purchase or to lease the demised premises and property for a term to begin subsequent to the present demised term or any extension or renewal thereof, and Lessor desires to sell or lease said premises and property under the terms of said offer, Lessor agrees to give Lessee immediate notice in writing of such bona fide offer setting forth the name and address of the proposed purchaser of all terms and provisions thereof. Lessee shall have the first option to purchase or lease the demised premises within thirty days after said notice on the same terms of any such proposal. In the event that Lessee does not elect to purchase the demised premises and property within that period then Lessee shall have, upon the same conditions of notice, the continuing first option to purchase the said premises upon the terms of any subsequent bona fide offer or offers to purchase. Provided nothing herein contained shall be construed as making this lease subject to cancellation in the event of sale, and provided further that failure of Lessee to elect to lease under this paragraph in any instance shall in no way limit or affect Lessee's rights under paragraph 11 above." (Our emphasis)

On March 20, 1974 Phillips assigned its lease to Tarrant. On June 10, 1974 the Selfs received a letter from Tarrant's attorney which read in part:

"In accordance with the terms and conditions of said agreement, you are both hereby notified for and on behalf of Mr. Tarrant that he is exercising his option to purchase your property at that area as provided in paragraph number 10 of said agreement."

The Selfs refused to sell the real estate and Tarrant filed this action for specific performance prior to the expiration of his lease. Afterwards on July 29, 1974 and July 31, 1974 the Selfs notified Tarrant of two bona fide offers from third parties to purchase the leased property for $40,000 and $65,000, respectively. Tarrant did not match those offers within thirty (30) days as required by the lease. Tarrant did not exercise his option to extend the lease, has remained in possession of the properties, and has paid no rent since July of 1974.

The trial court denied Tarrant's request for specific performance, ordered Tarrant to pay Ethyl Self $13,650 in back rent, and ordered Tarrant to relinquish possession of the property to Self.

## ISSUES

The following issues have been presented for review:

1. Was the trial court clearly in error in finding that Tarrant could have had a fixed-price purchase option on the leased property only after the expiration of the first 15 years of the Tarrant lease?

2. Was the trial court clearly in error in finding that Tarrant could have had a fixed-price purchase option on the leased property only after having elected to renew the lease for an extended term?

3. Was the trial court clearly in error in finding that Tarrant's right of first refusal limited his fixed-price purchase option on the leased property since bona fide purchase offers were received by the Selfs from third parties prior to the existence of the fixed-price option?

## DISCUSSION AND DECISION

*Issues One and Two*

Tarrant contends that the trial court erred in finding that Tarrant could have had a fixed-price purchase option on the leased property only after the expiration of the first fifteen (15) years of his lease and only after his having elected to renew the lease for an extended term.

■ First of all we note that Tarrant is appealing from a negative judgment. Therefore, Tarrant must show that the judgment of the trial court is contrary to law by showing that the evidence is without conflict and can lead only to the conclusion opposite to that reached by the trial court. See *Link v. Sun Oil Company*, (1974) 160 Ind.App. 310, 312 N.E.2d 126.

■ On appeals from a trial before the court without a jury, this court will not disturb the judgment of the trial court unless such is clearly erroneous. See *University Casework Systems, Inc. v. Bahre*, (1977) Ind.App., 362 N.E.2d 155. The judgment of the trial court must be upheld if it can be sustained on any legal theory which the evidence supports. See *Utica Mut. Ins. Co. v. Ueding*, (1977) Ind.App., 370 N.E.2d 373.

We note that although Tarrant became the assignee of the Phillips lease in March of 1974, the evidence most favorable to the Selfs shows that Tarrant was exercising his option to purchase only under his lease and not under the Phillips lease. Therefore we look only to the provisions of Tarrant's lease to determine whether Tarrant effectively complied with the prescribed procedure for exercising his option to purchase the leased land.

■ The trial court, in effect, held that the provisions of the Tarrant lease, which permitted Tarrant to purchase the leased land at his option "after the first Fifteen (15) years of the term hereof," must be interpreted as creating the option only after the expiration of the lease, that is, after July 31, 1974. The logical inference, then, is that the option to purchase could not have been exercised unless Tarrant renewed the lease for at least one five (5) year term.

■ A literal reading of the provisions of the Tarrant lease would support the trial court's decision that the option to purchase never came into being. At best the language could be considered ambiguous, and such ambiguity must be construed against Tarrant in that he drafted the lease and was more experienced in these matters than were the Selfs. See *McMahan Const. Co. v. Wegehoft Bros., Inc.*, (1976) Ind.App., 354 N.E.2d 278. Therefore, we hold that the trial court did not err in finding that Tarrant's option to purchase did not come into existence.

*Issue Three*

Tarrant contends that the trial court erred in finding that because of his failure to meet the terms of the offers by two third parties who wanted to purchase the leased land, he was precluded from exercising his option to purchase at the fixed amount designated in the lease. We disagree.

■ Where both a fixed-price purchase option and an option giving the lessee the right of first refusal are contained in a lease the parties must specifically designate which one takes precedence over the other. Where, as here, the lease does not prescribe which provision takes precedence over the other, if, before the lessee exercises his option to purchase at a fixed amount or before such option comes into existence, whichever is later, the lessor properly notifies the lessee of a bona fide offer to purchase the leased premises, and the lessee refuses to exercise his option to purchase the property under the terms of such offer, then the lessee forfeits his right to purchase under the fixed-price option. See *Shell Oil Co., Inc. v. Blumberg*, (5th Cir.1946) 154 F.2d 251; *Adams v. Helburn*, (1923) 198 Ky. 546, 249 S.W. 543; *Northwest Racing Ass'n v. Hunt*, (1959) 20 Ill.App.2d 393, 156 N.E.2d 285; *Shell Oil Co. v. Jolley*, (1972) 130 Vt. 482, 296 A.2d 236; and *Annotation*, 8 A.L. R.2d 604.

We, therefore, hold that the trial court did not err in finding that Tarrant's failure

**1354**

to exercise his option to purchase the leased property under the terms of the respective bona fide offers of certain third parties would have precluded Tarrant from purchasing under the fixed-price purchase option if such had later come into existence.

Judgment affirmed.

ROBERTSON, J., and HOFFMAN, J. (Participating by designation), concur.